Russell A. Robinson, SBN 163937
Law Office of Russell A. Robinson
345 Grove Street, 1st Floor
San Francisco, CA 94102
Phone:       415.861.4416
Fax:          415.431.4526
rlaw345@gmail.com

Counsel for Plaintiff
**LORENZO ADAMSON**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LORENZO ADAMSON,

          Plaintiff,

v.

CITY & COUNTY OF SAN
FRANCISCO, GREGORY SUHR, and
DOES 1-40,

          Defendants.

_____/

Case No.

**COMPLAINT FOR DAMAGES AND FOR
INJUNCTIVE RELIEF**

## I.    JURISDICTION AND VENUE

1.    This action arises under 42 USC §1983.

2.    The claims alleged arose in and around the City & County of San Francisco, State of California.  Therefore, venue is proper in the Northern District of California, San Francisco.

## II.    PARTIES

3.    Plaintiff LORENZO ADAMSON (Adamson) is a long-time employee of the San Francisco Police Department; he is a peace officer as defined by California Government Code sections 3300-3311, with a protected property interest in his job under state and federal law.

4.    Plaintiff is a citizen of the United States of America.  He received many commendations and mostly excellent performance evaluations throughout his career.

5.     Plaintiff is informed and believes that Defendant CITY & COUNTY OF SAN FRANCISCO is, has been, a municipal corporation organized and existing under the laws of the State of California.  One of said Defendant's is the SAN FRANCISCO POLICE DEPARTMENT (SFPD).  Together, they are referred to below as "San Francisco" unless otherwise noted.

6.     Plaintiff is informed and believes that at all relevant times Defendant GREGORY SUHR (Suhr) was the Chief of Police from 2011 until he was, on information and belief, forced to resign on about May 19, 2016.

7.     Suhr is sued in his individual and official capacity.  He had both the ability to make command decisions, and exercised official authority for the SFPD.  He was until May 19, 2016, the highest ranking member of the SFPD and set official policy for the SFPD.  His decisions and conduct had the force of law.

8.     Plaintiff is ignorant of the identities of Defendants DOES 1 though 40, and therefore sues such defendants as fictitiously named persons/entities, whose true identities and roles in the events which are the subject matter of this complaint are presently unknown.

9.     Plaintiff will amend this complaint to identify fictitiously named Defendants and to set forth facts relating to each when same become known to Plaintiff.  Plaintiff is informed and believes and thereon alleges that each DOE Defendant is legally responsible for events alleged herein which caused injury and damage to Plaintiff.

10.     In doing acts or omissions alleged, the defendants and each of them were acting in the course and scope of their employment with their respective agencies.  In doing the acts or omissions alleged, the defendants acted under color of authority and/or under color of law.

11.     In doing the acts or omissions alleged, each of the defendants acted as the agent, servant, employee, and/or in concert with each of the other Defendants herein.

## III.   FACTS

12.     Plaintiff is informed and believes that there is, or was at relevant times, an atmosphere or environment which tolerated favoritism and nepotism in San Francisco, which was officially ratified, condoned, or created by customs, practices, and policies that existed at

1   relevant times.

2      13.   Plaintiff is informed and believes that there is, or was at relevant times, an

3   atmosphere or environment which tolerated certain forms of discrimination San Francisco.  A

4   great deal of this discrimination came to light in two "text-gate" scandals during Suhr's time as

5   Chief of Police.

6      14.   Initially, a number of mostly white (Caucasian) officers, including at least one

7   captain, sent and received text messages via cellular telephone in 2011 and 2012 (Text Gate I).

8   They included salutes to "white power," referred to minorities as "animals" and "monkeys" and

9   say they should be hanged, and used slurs such as "fags" for homosexuals.  The Internal

10   Affairs (IA) Division obtained the material as early as 2012, but kept the material hidden for

11   several years.  When the SFPD finally decided, because of intense pressure, to initiate

12   disciplinary proceedings against these texting officers, it was determined that the SFPD violated

13   the one-year deadline for disciplinary action under state law (the Peace Officers' Bill of Rights)

14   because the text messages were obtained more than two years prior to the initiation of

15   discipline.  Thus, initiation of discipline against these officers was recklessly, intentionally, or

16   otherwise calculated so they would not be terminated.  On information and belief, more than

17   one of the involved officers had a significant history of disciplinary issues but he had been

18   protected and promoted.

19      15.   The second text-gate scandal was brought to light in early 2016 (Text Gate II).

20   This involved at least three officers.  Suhr came under mounting pressure to show he was in

21   control of a police department facing heavy criticism, and a U.S. Department of Justice review,

22   over racism of some officers as well as the circumstances of recent fatal shootings involving

23   people of color.  Some of the messages in Text-Gate II included derogatory and at times

24   threatening statements toward black, Latino, Indian, transgender and gay people.

25      16.   On information and belief, command staff members of the SFPD under Suhr and

26   the members' "bargaining unit", the POA, have a somewhat cozy relationship despite engaging

27   in public displays of hard-nosed negotiation.

28

17.     Plaintiff is informed and believes that Defendants, individually or acting in concert, engaged in acts of misconduct and constitutionally-destructive conduct against certain persons working for the SFPD.  These repeated acts, part of a pattern and practice, did in fact lead to the constitutional deprivations complained of herein.

18.     Plaintiff is further informed and believes said civil rights violations and or other acts of misconduct included intimidation, denial of due process and equal protection, retaliation, conspiracy to violate civil rights, and/or other misconduct.

19.     Plaintiff is further informed and believes that said misconduct by all defendants included but was not limited to subjecting persons such as Plaintiff to retaliatory actions because he engaged in protected activity.  Plaintiff has and continues to bring matters of public concern to the attention of local authorities, and he has like other officers petitioned for redress of grievances.  As a result, Plaintiff and others like him were subjected to unequal treatment, civil rights violations, and other misconduct.

20.     Plaintiff is further informed and believes that municipal defendants repeatedly failed to take remedial or corrective action despite the pervasive and ongoing malfeasance within their respective offices.

21.     Plaintiff is further informed and believes that these are matters of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons such as Plaintiff and others similarly situated.

22.     Plaintiff is further informed and believes that the culture of tolerance which existed under Suhr, and may still exist, is rooted in the deliberate indifference of high-ranking municipal officials.  Plaintiff is informed and believes that as a result of the above and below acts, he suffered the violation of constitutional rights because of customs, practices, policies, and patterns, including but not limited to a deliberate indifference.

23.     Plaintiff is informed and believes that despite notice of repeated constitutional violations being perpetrated by these employees, Defendants and each of them failed to take appropriate action.

24.     Plaintiff is informed and believes that as a direct, legal, and proximate result of the acts and omissions alleged above, Plaintiff suffered loss of his constitutional rights and suffered grievous injuries. These losses and injuries were caused, in part, by unconstitutional yet official, *de facto* customs, policies, practices, and patterns, which were the moving force behind Plaintiff's injuries.  Plaintiff is informed and believes unlawful conduct was condoned, encouraged, approved, and/or ratified by Defendants and each of them.

25.     Plaintiff is informed and believes that as a result of the above facts, he suffered the violation of his constitutional rights and was injured.

**IV.   SPECIFIC FACTS**

26.     Plaintiff had been stationed at Bay View Station for years.

27.     On May 30, 2013, Plaintiff was stopped by three SFPD officers, Brian Stansbury, Christopher O'Brien, and Daniel Dudley.  O'Brien and Dudley were recruits, in the final phases of training, but still on probation.

28.     Immediately after effecting their traffic stop of Plaintiff, who was operating a vehicle without license plates, the three officers asked Plaintiff if he was on probation or parole. The three detaining officers are white; Plaintiff is black.

29.     Plaintiff, who repeatedly identified himself as a peace officer, eventually was dragged to the ground and arrested.

30.     Suhr eventually placed Plaintiff on interim suspension, took his star from him, and ordered Plaintiff to surrender any firearms.

31.     Plaintiff was then criminally prosecuted at the urging and behest of the SFPD and Suhr.  That trial ended in multiple acquittals on August 4, 2014, and dismissal of related charges on August 8, 2014.  Plaintiff's related civil suit for false arrest, excessive force, and related claims ended with a Jury verdict on November 19, 2015, and a stipulated dismissal on March 10, 2016.

32.     Through the criminal prosecution and continuing after November 2015, Suhr and the SFPD continued to investigate and to attempt to terminate Plaintiff.  While he was able to

gain a return to work after termination was initiated by Suhr, Plaintiff as of May 30, 2016, had not yet been returned to his former duty and had been subjected to the loss of six months' pay. He had not worked any over-time since May 30, 2013, and was unable to work out of class as a sergeant for the entire period.

33.　　It was not until June 1, 2016, that Plaintiff was able to have the SF Police Commission determine that Plaintiff would be able to return to work in his previous capacity and would be awarded all back-pay (180 +/- days) except for 45 days.

34.　　Meanwhile, despite the fact that all three of the officers who arrested Plaintiff on May 30, 2013, had committed multiple acts of misconduct in connection with the arrest, subsequent investigations, and litigation, none of the three were disciplined.

35.　　Plaintiff was singled out for criminal prosecution and termination. Suhr admitted on about October 9, 2014, that the filing of the civil action led directly to additional charges and allegations in connection with the effort by San Francisco to terminate Adamson.

36.　　Plaintiff suffered injuries as a result.

**V.　CAUSE OF ACTION – 42 USC §1983**

37.　　Plaintiff incorporates by reference all of the preceding paragraphs as though set forth fully herein.

34.　　Plaintiff is informed that, as to Defendants and each of them, each was acting pursuant to official, *de facto* policies and in concert with one another when they injured Plaintiff; each was acting in concert with the co-defendants, with the shared objective to injure the plaintiff and others like him. The violations included but were not limited to the following:

A.　　The right to be free from false police work, selective prosecution, and prosecutors motivated by "self-aggrandizement";

B.　　Right not to be deprived of Due Process of law;

C.　　Right to be free from pre-trial punishment;

D.　　Right to be free from discrimination based on protected activity; and/or,

E.　　Right to Equal Protection of the Law.

35.     Said rights are substantive guarantees under the First, Fourth, and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff pray for relief as follows:

**VI.     PRAYER**

a.     Compensatory damages according to proof;

b.     General damages according to proof;

c.     Punitive and exemplary damages, as to the individually-named defendants, only;

d.     For costs of suit and for reasonable attorneys' fees under, *inter alia,* 42 USC section 1988;

e.     For pre-judgment and post-judgment interest;

f.     For an order requiring Defendants, all persons acting on behalf of Defendants, and each of them, to do the following:

1.     To reinstate Plaintiff immediately to his former position, as that existed on May 29, 2013;

2.     To investigate the three officers involved in the arrest of Plaintiff oin May 30, 2013, who were the subject of a related, pending civil suit until March 10, 2016; and,

g.     Such other and further relief as the Court deems just and proper.

Date:  August 1, 2016                      _/s/  Russell A. Robinson_
                                        Law Office of Russell A. Robinson
                                        By:     Russell A. Robinson
                                        Counsel for Plaintiff
                                        **LORENZO ADAMSON**

**VII.     DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial, as is his right.

Date:  August 1, 2016                      _/s/  Russell A. Robinson_
                                        Law Office of Russell A. Robinson
                                        By:     Russell A. Robinson
                                        Counsel for Plaintiff
                                        **LORENZO ADAMSON**