UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**LORENZO ADAMSON,**

Plaintiff,

v.

**CITY & COUNTY SAN FRANCISCO, ET AL.,**

Defendants.

Case No. 16-cv-04370-YGR

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND GRANTING IN PART MOTION TO STRIKE CERTAIN ALLEGATIONS**

Re: Dkt. No. 42

Plaintiff Lorenzo Adamson brings this federal civil rights action against Defendants City and County of San Francisco and Gregory Suhr. Defendants previously moved to dismiss plaintiff's complaint, which alleged a single claim under section 1983. The Court denied the motion on grounds of claim preclusion, but granted the motion, with leave to amend, on the grounds that the claim did not tie the factual allegations to particular Constitutional violations or theories. Plaintiff filed his Second Amended Complaint ("SAC") on July 28, 2017, alleging claims under 42 U.S.C. section 1983 for: (1) malicious prosecution in violation of his Fourth Amendment rights; (2) retaliatory prosecution in violation of his First Amendment rights; and (3) selective prosecution in violation of his rights to equal protection under the Fourth and Fourteenth Amendments.[1] (Dkt. No. 41.)

Defendants have filed a motion to dismiss the SAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, as well as to strike certain allegations under

---

[1] Plaintiff agrees to dismiss his fourth claim for violation of due process under the Fourth and Fourteenth Amendments. (Oppo. at 4, n. 3.) The Court therefore **DISMISSES** the fourth cause of action in the SAC and the motion to dismiss this claim is **DENIED AS MOOT** in light thereof.

Rule 12(f) as "redundant, immaterial, impertinent or scandalous matter." (Dkt. No. 42.)

Having carefully considered the papers submitted[2] and the pleadings in this action, and for the reasons set forth below, the Court **DENIES** the Motion to Dismiss the SAC and **GRANTS IN PART** the motion to strike, finding that the allegations at paragraphs 40 and 66 are properly stricken, but denying the motion as to paragraphs 14-18.

**I. DISCUSSION**

**A. First Cause of Action – Violation of Fourth Amendment Rights/ Malicious Prosecution**

Plaintiff alleges malicious prosecution with respect to both his criminal prosecution and the administrative disciplinary proceedings against him. To establish a malicious prosecution claim under section 1983, plaintiff must allege: (1) the initiation of a prosecution which ended in a termination favorable to plaintiff; (2) lack of probable cause; (3) malice; and (4) that the prosecution was done for the purpose of denying plaintiff's constitutional rights. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004); *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987).

Defendants argue that Adamson fails to allege lack of probable cause for those proceedings. They further argue that the District Attorney's decision to prosecute the criminal action means that lack of probable cause could not be alleged in any event. In addition, defendants contend that plaintiff has not alleged facts showing Chief Suhr's personal involvement in the criminal prosecution, or facts to show favorable termination of his disciplinary matter.

In the Fourth Amendment context, the presumption of probable cause based upon the prosecutor's filing of a criminal complaint is rebuttable if the plaintiff can show that the prosecutor's judgment has been compromised. *Smiddy v. Varney*, 665 F.2d 261, 266-68 (9th Cir. 1981). "[T]he presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly

---

[2] Defendants incorrectly represent the Court's prior ruling. (Motion at 4:26-27.) In its prior Order, the Court did not take judicial notice of Exhibit A of the Request for Judicial Notice ("RJN") filed November 30, 2016, but instead expressly *denied* judicial notice, finding it inappropriate in connection with a pleading motion. (Court's July 7, 2017 Order, Dkt. No. 40, at 7.) The Court has not considered Exhibit A to the prior RJN in connection with this motion.

2

provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067. Here, plaintiff alleges that defendants "pushed" his 2013 criminal prosecution with a neophyte District Attorney, and "create[d] new and different versions of evidence in an effort to convince the District Attorney's office to file and prosecute a case with no merit against Adamson which otherwise would not have been prosecuted." (SAC ¶¶ 34, 42.) Adamson further alleges that defendants "manipulated evidence, approved and fostered false statements in the form of reports and narratives, and provided false explanations to circumvent the video." (*Id.* ¶ 49.) These allegations are sufficient, if proven, to rebut the presumption that the prosecutor acted with probable cause.

Defendants also allege that plaintiff failed to allege that Suhr was "actively instrumental" in causing his prosecution. *See Awabdy*, 368 F.3d at 1067. They contend that the allegations are too conclusory to state a claim against Suhr. Plaintiff alleges that he was "criminally prosecuted at the urging and behest of the SFPD and Suhr" and that the prosecution was "pushed by insiders such as Suhr" with the newly elected District Attorney. (SAC ¶ 34.) He also alleges that his termination was "initiated by Suhr." (*Id.* ¶ 35.) He alleges that "Suhr admitted on about October 9, 2014, the filing of the civil action led directly to additional charges and allegations in connection with the effort by San Francisco to terminate Adamson." (*Id.* ¶ 38.) He further alleges, on information and belief, that "SFPD, with Suhr's knowledge or direct involvement . . . pushed the criminal prosecution against Adamson," and the case was filed at his urging. (*Id.* ¶¶ 42, 48.) These allegations are sufficient to allege that Suhr was actively instrumental in causing plaintiff's prosecution.

Finally, defendants contend that plaintiff cannot allege the favorable termination element of the malicious prosecution claim with respect to the administrative disciplinary proceedings because he concedes that he was suspended for 45 days. An individual seeking to bring a malicious prosecution claim must establish that the prior proceedings terminated in such a manner as to indicate his innocence. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004). Plaintiff plainly alleges that the termination of the criminal proceedings was favorable, since plaintiff was acquitted, and his remaining claims were dismissed. (SAC ¶ 48.) The allegations of

3

the first cause of action make reference only to the criminal prosecution. (*Id.* ¶¶ 45-50.) Thus, the Court does not view the administrative proceedings, and whether their termination was favorable, to be a part of this claim.

### B. Second Cause of Action -- Violation of First Amendment Rights

For a claim of retaliatory prosecution in violation of the First Amendment, while a plaintiff must show allege a prosecution without probable cause, there is no requirement that plaintiff rebut a presumption arising from a prosecutor's decision to proceed. "Instead, a showing of a 'retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision' will suffice . . . ." *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008) (*quoting Hartman v. Moore,* 547 U.S. 250, 265 (2006)).

As with the first cause of action, the plaintiff has alleged facts sufficient to state that the criminal case was pursued without probable cause. Plaintiff also states a lack of probable cause for the administrative termination proceedings, which he alleges were brought as retaliation for the press conference and the filing of his civil suit for false arrest and excessive force. Plaintiff alleges that the termination, "by Suhr's admission on about October 9, 2014, [was] fostered and expanded by the filing of the civil action (which led directly to additional charges and allegations)." (*Id.* ¶ 56.)

Defendants argue that plaintiff has not alleged sufficiently the causal link between his First Amendment protected activity (the press conference and his civil suit) and defendants' initiation of a criminal prosecution and administrative disciplinary charges. The Court disagrees. Plaintiff alleges that the traffic stop and arrest occurred in May 2013 and the press conference occurred approximately one month later on June 4, 2013. Based on the allegations of the SAC, the criminal prosecution was initiated sometime within the next four to five months in 2013. (*Id.* ¶ 34.) *Adamson I* was filed on November 12, 2013, while the criminal charges were pending. These allegations of temporal proximity support the claim that defendants' reasons for their actions are a pretext for retaliatory motivation. *See Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016) ("plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false"). Moreover, plaintiff alleges that Suhr admitted that

4

plaintiff's filing of his civil suit led directly to additional charges and allegations against him in the criminal and administrative proceedings. (*Id.* ¶ 49.)

### C. Third Cause of Action – Violation of Equal Protection (Fourth and Fourteenth Amendments)/Selective Prosecution

A claim of selective prosecution is sufficiently alleged where the plaintiff sets forth facts to establish that the prosecutor decided to enforce the law "on the basis of an impermissible ground such as race, religion or exercise of . . . constitutional rights." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 922 (9th Cir. 2012) (citing *United States v. Kidder,* 869 F.2d 1328, 1336 (9th Cir. 1989)). A claimant must demonstrate that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (*quoting Wayte v. United States*, 470 U.S. 598, 608 (1985)). There is a presumption of regularity in prosecutorial decisions such that plaintiffs alleging selective prosecution must present "clear evidence" that the decision to prosecute was based on an unjustifiable standard such as race, religion, or other arbitrary classification to overcome that presumption. *Id.* at 464-65. "A claimant can demonstrate discriminatory effect by naming a similarly situated individual who was not investigated or through the use of statistical or other evidence." *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002).

Plaintiff contends that this action concerns two selective prosecutions: the criminal case against him that ended in acquittal on August 8, 2014; and the disciplinary case that ended June 1, 2016. He alleges that he was subjected to selective prosecution and discipline because he is African-American, and that other officers who engaged in similar or worse conduct were not prosecuted criminally or disciplinarily. He alleges that he was disciplined for having tinted windows or a missing license plate on his personal vehicle, while "for the past five-ten years officers' private vehicles are parked at or near stations, including Bayview . . . [and s]everal of said vehicles at each station have tinted windows and/or are missing license plates," yet none of those officers were subjected to discipline, criminal sanctions, or even citations. (SAC ¶ 65.) He alleges that white officers falsified evidence and reports but faced no repercussions, while he was accused of lying and falsifying statements which resulted in criminal prosecution and disciplinary action to terminate him. (*Id.* ¶ 67.) Adamson alleges the three officers who engaged in unlawful

5

conduct in connection with his arrest, and far worse crimes, are all white and were not prosecuted. (*Id.* ¶ 63.) He alleges that the white officers who came forward in the administrative action recounted many transgressions by Adamson, but admitted that they never reported those issues. (*Id.* ¶ 65.) Failure to report violations would have been a basis for discipline under "General Orders and California law," yet the white officers were never disciplined. (*Id.* ¶ 65.) He further alleged that a white officer involved in a violent road rage incident was not prosecuted or disciplined. (*Id.* ¶ 64.)

Plaintiff's allegations are sufficient, at the pleading stage, to state a claim that he was treated differently than similarly situated white police officers, *i.e.* officers who engaged in conduct similar to that alleged against him. Defendants offer no authority to support their suggestion that "similarly situated" requires a higher degree of identity between the conduct resulting in plaintiff's prosecution and the conduct in which other police officers are alleged to have engaged. *Cf. Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995) (for purposes of equal protection claim regarding denial of bar's application for dance permit, similarly situated bars would be those having the same kind of bar license, rather than comparing all "non-Mexican immigrant bars").[3]

### D. *Monell* Claim Against the City

Defendants argue that the City should be dismissed because plaintiff has not alleged that it has a pattern, practice, or policy of maliciously prosecuting police officers without probable cause. Plaintiff contends that Suhr's conduct constitutes official policy and can be attributed to the City

---

[3] On reply, for the first time, defendants argue that Suhr should not be held liable personally for the actions of his subordinates because there are no allegations of his personal participation. (Reply at 5:17-21.) Even if the Court were to consider this late-presented argument, it is without merit. The SAC has alleged Suhr's personal involvement in the alleged violations. Moreover, supervisor liability can be established through a variety of means, not just personal participation – for example, if the individual supervisor directed the alleged constitutional violations; knew of the violations and failed to act to prevent them; set in motion a series of acts by others; knowingly refused to terminate a series of acts by others that the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury; or knew and acquiesced in the unconstitutional conduct of subordinates. *See Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991).

for purposes of *Monell* liability. *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 691–94 (1978) (municipality liable for violation of constitutional rights if officer's conduct is directly attributable to municipality's policy or custom). The Supreme Court has held that a single decision by an official with policymaking authority can constitute official policy. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 470 (1986). Defendants agree with this characterization of the controlling authority, but contend that plaintiff has not alleged facts showing that Suhr is a final policy making authority for either criminal prosecution or disciplinary matters. Defendants contend the District Attorney makes final decisions regarding criminal prosecutions, and the San Francisco Police Commission makes final decisions regarding discipline.

"[A] local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. Cnty. of Contra Costa,* 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir. 1992)); *see also Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (same). Municipal liability attaches when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. 469, 483; *see also Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008) (same).

Here, Adamson, a San Francisco police officer, alleges that he was criminally prosecuted and subject to employee discipline arising from an incident in which other San Francisco officers forcibly restrained him in the course of a traffic stop made while Adamson was off-duty. Adamson contends that Suhr, the Chief of Police, personally participated in demanding the criminal prosecution against him, as well instituting termination proceedings. (SAC ¶¶ 34, 35, 42, 48.) He alleges that Suhr was the chief policymaker for SFPD at the time, and that "Suhr created, ratified, and/or adopted a prosecutorial policy with a discriminatory effect motivated by discriminatory purposes." (*Id.* ¶¶ 53, 68.) He also alleges that Suhr exercised official authority and set official policy for the San Francisco Police Department at the time of the alleged prosecution and disciplinary proceedings against plaintiff. (*Id.* ¶¶ 7, 45, 53, 62.) In the context of the factual allegations set forth in the SAC, plaintiff has stated a basis for *Monell* liability against

7

the City, based on Suhr's actions, sufficiently.[4] *Cf. Pembaur*, 475 U.S. at 483 (under the circumstances presented, a county prosecutor was acting as final decisionmaker for the County when he ordered deputy sheriffs to enter a clinic with arrest warrants, despite the contention that only the County Sheriff had authority to make such an order).

### E. Motion to Strike Allegations

Defendants seek to strike seek to strike paragraphs 14-18, 40, and 66 pursuant to Rule 12(f). The allegations in these paragraphs discuss a well-publicized situation at the San Francisco Police Department in 2011 and 2012, while Suhr was the Chief, in which mostly white officers sent text messages containing racist, homophobic, and transphobic slurs. (SAC ¶¶ 14-17.) Plaintiff alleges that Suhr was aware of these texts, but delayed or avoided taking disciplinary action against the officers, and in fact promoted those officers. (*Id.*) The SAC also alleges that Suhr enjoyed the support of the police officers' union and the Mayor's Office, which "allowed to thrive an environment that was both racist and retaliatory." (*Id.* ¶ 18.) These allegations are not so "redundant, immaterial, impertinent or scandalous" to warrant striking and are relevant context for plaintiff's claims of discrimination and retaliation.

With respect to the allegations in paragraphs 40 and 66, the Court agrees that these allegations—concerning Suhr's handling of various scandals and protests, both before and after he was made Chief—are too tangential to plaintiff's claims and cross the line into "impertinent and scandalous" material.[5]

//

//

---

[4] The Court notes that defendants cited, for the first time on reply, portions of the San Francisco City Charter that they contend would show Suhr is not a policymaker for purposes of disciplinary decisions. No request for judicial notice was made as to the referenced provisions of the charter in effect at the time. The Court cannot decide, as a matter of law, that the allegations of the SAC are incorrect, or that the facts alleged here would not establish Surh's policymaking authority for purposes of *Monell*.

[5] Should plaintiff establish good cause for discovery into any of these areas, they may nevertheless be within the proper scope of discovery. For instance, plaintiff contends that paragraph 40E, alleging retaliatory termination of an attorney because of his recommendation that Suhr be fired for his handling a domestic violence incident, supports the contention that Suhr was motivated to retaliate against Adamson.

## II. CONCLUSION

Based on the foregoing, the Motion to Dismiss the first, second, and third causes of action in the SAC is **DENIED**. The motion to dismiss the fourth cause of action is **DENIED AS MOOT** in light of plaintiff's voluntary dismissal of this claim. The motion to strike certain allegations is **GRANTED IN PART** as to paragraphs 40 and 66, and **DENIED IN PART** as to paragraphs 14 to 18.

This terminates Docket No. 42.

**IT IS SO ORDERED.**

Dated:  March 23, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**